291 So.2d 835 (1974)
William A. SMITH
v.
Myrt EVERETT.
No. 5968.
Court of Appeal of Louisiana, Fourth Circuit.
March 15, 1974.
Rehearing Denied April 9, 1974.
Writ Refused May 24, 1974.
*836 James F. Quaid, Jr., Metairie, Cecil M. Burglass, Jr., Charles E. McHale, Jr., New Orleans, for plaintiff-appellee.
Hartman C. Daniel, Metairie, for defendant-appellant.
Before REDMANN and STOULIG, JJ., and ROBERT M. FLEMING, J. Pro Tem.
STOULIG, Judge.
Defendant, Myrt Everett, has appealed a judgment avoiding a sale of realty, based on a finding that he, an expert realtor, obtained plaintiff's consent to sell the property at one-seventh its value through fraud and misrepresentation. Plaintiff, William A. Smith, has a seventh grade education and is employed as a garbage collector.
The events that precipitated this litigation began more than ten years ago. In April or May of 1963, defendant, while searching the public records of Jefferson Parish, discovered that plaintiff's deceased parents, Mattie A. Leggett and John T. Smith, owned a tract of vacant land fronting on what was to become the service road of Interstate 10 Highway near the proposed Causeway Boulevard Interchange.
A portion of the property was expropriated by the State of Louisiana for highway purposes, the compensation for which was deposited in the registry of the court. It is the remaining part after the expropriation that is involved in this litigation. Though plaintiff continued to pay taxes on the property after his mother's death, he never opened the successions of his parents to have the title transferred to his name.
Defendant first contacted plaintiff at his home in the St. Thomas Housing Project in New Orleans from where he was taken to the office of defendant's attorney. After *837 some discussion of details, the attorney prepared an agreement whereby plaintiff gave defendant an option to buy the tract of ground at issue for $9,200. The option was for a term of one year, having for its consideration the payment of $10 cash and the cost of the curative work necessary to perfect title in the plaintiff. It was agreed Everett's attorney, without cost to the plaintiff, would open the successions of Mattie A. Leggett and John T. Smith and have plaintiff recognized as the sole heir and placed in possession of these estates. In addition he would obtain for Smith the funds deposited by the highway department in the registry of the court for the expropriated portion of the property.
At some point after the initial encounter and before the option was exercised, Smith found his way to his own attorney. As a result, on September 10, 1963, plaintiff filed suit to have the option agreement declared null on the ground of lesion beyond moiety and to have the fair market price judicially determined. Then, petitioner prayed defendant would be presented with an election to pay the judicially determined value or rescind the agreement. Exceptions of prematurity and no cause of action were leveled against the petition but were never passed upon by the trial court. Defendant filed an answer admitting entering into the option agreement but denied all of its other allegations. In January 1964, plaintiff supplemented his petition to allege defendant took advantage of plaintiff's lack of education to persuade him to sell the property for a fraction of its real value and this constituted fraud.
In due course the trial began. The second day of hearing evidence was June 29, 1964, and the matter was continued as an open case. By the time the litigation had reached this point, the trial judge, having observed defendant during the trial and at conferences held in connection therewith, cautioned defendant not to contact plaintiff directly.
Despite the fact that the validity of the title was being litigated, plaintiff was advised by a letter from the defendant's attorney-notary that he must appear on August 5, 1964 at the latter's office for the purpose of transferring title pursuant to the option. Smith's attorney was not notified. Plaintiff advised the notary he was unable to appear on August 5, but could do so on the following day. Everett picked up Smith at his home on August 6 and took him to the office of Roland Seleberg, then defense counsel, where an act of sale was passed at approximately 8 p. m. After signing, plaintiff was not given the recited $9,240 consideration. According to the defendant the funds were being withheld until title defects were cured. To do this Everett prepared two letters for Smith's signature, one addressed to Cecil Burglass dismissing him as plaintiff's attorney, and a second to the district judge advising him that plaintiff had signed the act of sale and voluntarily dismissed his attorney. When Everett made another visit to plaintiff's home to get his signature on the two letters, at the same time he had him sign a motion to dismiss the suit then pending. Smith, who will apparently sign anything, complied.
On August 25, 1964, the joint motion to dismiss signed by Selenberg as attorney for defendant and Smith in proper person was presented to the trial judge, and he signed an order dismissing the suit with prejudice.
In the meantime, plaintiff's attorney Cecil Burglass knew nothing of the sale or the dismissal, and although his office is located one block from Selenberg's, defense counsel failed to apprise him of any of his client's transactions. When these matters came to his attention, he filed an ex parte motion to vacate the August 25 dismissal and it was signed by the trial judge on September 1, 1964.
On September 17, 1964, plaintiff filed a second supplemental and amending petition, reiterating all allegations in his previous pleadings, and alleging, inter alia: Everett ignored the court's previous instruction by contacting plaintiff directly and took advantage of his ignorance in getting him to *838 sign an act of sale transferring the property for $9,240; defendant did not pay plaintiff the purchase price; plaintiff did not know what he signed; plaintiff's attorney never received an alleged notification; plaintiff had a valid contract with his attorney that would have prohibited the sale; and the property, worth at least $50,000, was transferred for the recited consideration of $9,240. The object of the second supplemental petition was to annul the order of dismissal; to have the sale declared a nullity because of fraud; and alternatively, to invoke the remedy available for lesion beyond moiety.
On November 6, 1964, defendant filed an exception to the procedure by which plaintiff obtained an ex parte order setting aside the dismissal of the suit with prejudice. Defendant urged an action in nullity was the appropriate pleading, not an ex parte order to vacate. At the same time, defendant, reserving all of his rights under the exception, filed an answer and the litigants stipulated the exception should be referred to the merits. Then the trial resumed and counsel for both litigants concluded their presentations of evidence on July 26, 1965, when the matter was taken under advisement by Judge Frederick Heebe. On May 2, 1966, Judge Heebe, having been appointed to the federal bench, resigned as a judge of the Twenty-fourth Judicial District Court without rendering judgment in this case. In June 1966, the attorneys then representing the litigants stipulated that inasmuch as Judge Heebe had heard the evidence he could advise a judge of the Twenty-fourth Judicial District Court of his findings and any judge in office could render judgment based on this finding.
On February 2, 1972, Judge Frank V. Zaccaria signed the judgment from which this appeal was taken and this was filed in this record with written reasons signed by Judge Heebe. On that same date the stipulation was filed.
Defendant contends that the judgment rendered is a nullity for either of two reasons: (1) Any judgment rendered in this cause after the matter was dismissed with prejudice has no effect; and/or (2) Judge Zaccaria could not render a valid judgment because he did not hear the case and because the mandatory requirements of LSA-R.S. 13:4209 that permits a successor judge to adjudicate a matter tried by his predecessor were not complied with.
With respect to the first contention of procedural nullity, we agree that the ex parte order dismissing plaintiff's suit with prejudice had the effect of a final judgment under LSA-C.C.P. art. 1673 and plaintiff's recourse was to bring an action in nullity on the allegation its rendition was obtained by fraud and ill practice. This is precisely what plaintiff did in supplemental pleadings filed after the order of dismissal was signed and later vacated on a second ex parte order. Of course the entire posture of this litigation was changed by defendant's actions between the second day of hearing evidence (June 29, 1964) and the signing of both the order of dismissal and the subsequent order vacating the dismissal. Once the sale was passed the action to rescind the option became moot.
Thus in the "Second Supplemental and Amended Petition," plaintiff necessarily recited different requests for relief. He sought first to nullify the fraudulently obtained order of dismissal and secondly to either rescind the sale because of fraud or alternatively render relief consistent with a lesion beyond moiety situation. The defect of the invalid order vacating the prior order of dismissal was thus cured by filing a timely action to nullify the judgment. It is of no moment that plaintiff did not obtain a new docket number when this action was filed in the district court. Pleading is not an end in itself. Issue was joined when defendant filed its answer. We comment here we are constrained to view plaintiff's procedural approach with the utmost liberality because he and his attorney were subjected to fraud and ill practice prior to filing *839 the supplemental pleadings. The effect of judicially nullifying the dismissal with prejudice is to return the litigants to the status quo as though it had never been signed. This means when the trial continued whatever evidence and pleadings had been filed and adduced in the original action were validly before the court for consideration in adjudicating the merits of the relief sought in the second supplemental and amended petition.
Defendant next argues the judgment is a nullity because Judge Zaccaria's judgment was not rendered and signed in accordance with the procedure outlined in LSA-R.S. 13:4209, which reads:
"In all cases where cases are heard and taken under advisement of the district judge or judges of the city courts, if the judge before whom a case is tried should die, resign, or be removed from office, or should his term expire before rendering his judgment in the case, his successor in office shall decide the case from the evidence in the record, if all of the testimony is in writing, but if it should be a case in which the testimony has not been reduced to writing, the succeeding judge shall decide the case from a statement of the facts, if one be found in the record, or if the parties to the suit agree upon a statement of facts, and if the testimony be not in the record, and there be no statement of facts, the case shall be tried de novo."
As we view this statute, it does preclude attorneys for the litigants involved from entering into a stipulation for a different procedure. In this case all parties entered into the following stipulation:
"That inasmuch as the above entitled and captioned cause was tried and heard before the Honorable Judge Frederick Heebe who, prior to the submission of briefs in this matter and final submission of the case, assumed the duties as a United States District Judge in the Eastern District of Louisiana, it is stipulated and agreed between counsel that the Honorable Judge Frederick Heebe may advise a district judge of the Twenty-Fourth Judicial District Court as to his findings in connection with this matter and that thereafter, a judge of the Twenty-Fourth Judicial District Court in and for the Parish of Jefferson may render such judgment as is fit and proper in the matter."
As a result of this stipulation, defendant subscribed to a specific procedure for adjudication and cannot now, after the rendition of an adverse judgment against him, question its propriety.
We note defendant further argues that under LSA-C.C.P. art. 561 plaintiff abandoned his action by failure to take any step to further its prosecution within five years. Since this argument is based on the premise that the above-quoted stipulation is invalid and that this cause was not properly under submission, we will not discuss it in detail, having previously concluded the stipulation should govern. There is no dispute between the litigants on the point that a case under advisement for more than five years is not considered abandoned because the delay is attributable to the court. Burke v. State Farm Mutual Automobile Ins. Co., 234 So.2d 432 (La.App. 1st Cir. 1970).
Turning to the merits, we conclude the act of sale should be avoided as a nullity because plaintiff's consent was obtained through fraud. The disparity between the education and business experience of plaintiff and defendant makes it apparent they could not negotiate the sale on an equal footing. Everett had attended two universities, had experience selling stocks and bonds, and was a licensed realtor dealing primarily with real estate in Jefferson Parish when this sale was made. Smith, on the other hand, did not complete grade school, was employed as a garbage collector, was hard of hearing, was obviously docile, and readily signed anything placed before him. The judge conducting the trial noted defendant was at case in litigation *840 while Smith appeared to be intimidated by the whole process. Smith's testimony confirms he is an uneducated man who could easily be victimized or intimidated by an unscrupulous businessman.
At the time this property was sold, plaintiff's property had a fair market value of between $65,000 and $70,000, After signing the act of sale that recited he was to receive a consideration of $9,240, he was not even given his money. The property fronts on the service road of an interstate highway and has a high commercial value, according to expert realtors. But even if its use were restricted to residential purposes, it would still have a value in excess of $30,000.
Even were we to disregard the circumstances under which plaintiff was spirited from his home to the act of sale, the facts concerning location and value as compared to the sale price scream fraud. Clearly this contract should be invalidated under the provision of LSA-C.C. art. 1832. It provides:
"In all cases, however, when the information, which would have destroyed the error, has been withheld by the other party to the contract, it comes under the head of fraud, and invalidates the contract."
Had plaintiff known defendant was buying his property for a pittance of its real value, he would not have consented to the contract. And it is clear from the evidence defendant knew full well (or being a realtor should have known) he was buying from Smith for approximately one-seventh of the value of the property. In concealing the information as to true value, defendant obtained plaintiff's assent through fraud. The facts in this case are analogous to those in Griffing v. Atkins, 1 So. 2d 445 (La.App. 1st Cir. 1941). In that case, a jeweler, knowing a ring was valued at $1,250, bought it from an uneducated man for $130 on the representation this was the fair market price. The court rescinded the sale on a finding the buyer having superior knowledge of value deliberately withheld it from his seller to obtain an unfair advantage, and this constituted a fraud.
Finally, defendant seeks reimbursement of his out-of-pocket expenses in the event we affirm the judgment avoiding the act of sale and restoring this property to plaintiff. Defendant's pleadings do not ask for this relief in the alternative and the record is devoid of evidence proving what expenses, if any, were incurred. See American Guaranty Co. v. Sunset Realty & Planting Co., 208 La. 772, 23 So.2d 409 (1945). This request must be denied.
Accordingly we affirm and reiterate this judgment of the trial court:
"IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, William A. Smith, and against the defendant, Myrt Everett, declaring * * * that certain Act of Sale of August 5, 1964 null and void, rejecting all and any claims of the defendant Myrt Everett, and restoring to the plaintiff William A. Smith, all right, title and interest in the following described property; the subject of the aforementioned * * * Act of Sale:
TWELVE CERTAIN LOTS OF GROUND, together with all the improvements thereon, and all of the rights, ways, privileges, servitudes, advantages and appurtenances thereunto belonging, or in anywise appertaining, situated on Metairie Ridge in the Parish of Jefferson, State of Louisiana, in that subdivision thereof known as Metairie Lawn, designated as Lots Nos. 252, 253, 254, 255, 256, 257, 258, 259, 260, 261, 262 and 263 in Plot No. 9 on a plan of said Metairie Lawn Subdivision by the said Henry L. Zander, Parish Engineer, of date June 7, 1917, and annexed to an act before the undersigned Notary of date November 30, 1917, and according to which said plan said lots measure each 25 feet *841 front on Metairie Lawn Drive by 150 feet in depth between parallel lines. Said Plot No. 9 is bounded by Metairie Lawn Drive, Turnbull and Hilda Streets, and the property line of J. A. Gaudet.
Acquired from Henry L. Zander by Mattie A. Leggett, wife of, and John T. Smith, by act before Carl C. Friedrichs on March 24, 1921, registered in COB 511 folio 182; LESS AND EXCEPT, that certain portion of the above described property expropriated by the Louisiana Department of Highways, by judgment of the Twenty Fourth Judicial District Court, registered in COB 495, folio 658, of the Conveyance Records of the Clerk of said court, more particularly, described as follows:
ONE CERTAIN TRACT OR PARCEL OF GROUND, containing 14,332 square feet, together with all the improvements thereon, and all of the rights, ways, privileges, servitudes, advantages and appurtenances thereunto belonging, or in anywise appertaining, situated in the Parish of Jefferson, State of Louisiana, and in Square 9 of Metairie Lawn Subdivision, being Lots 252, 253, and 254, and portions of Lots 255, 256 and 257 thereof, the boundary lines of which tract are more particularly described as follows: Beginning at a point which marks the junction of the common property line between Lot 251 and Lot 252 of said square and subdivision with a westerly right of way line of Metairie Lawn Drive, thence run westerly along said common property line a distance of 150 feet to a point and corner, thence run northerly along the common property line between Lots 252 and 257 of said square and subdivision and Lot 19 of Square 26 and Lot 18 of Square 27 of Harlem Parkway Subdivision and 30th Street a distance of 124.16 feet to a point and corner, thence run Out westerly along a line bearing south 60 degrees, 29 minutes, 52 seconds east a distance of 58.61 feet to a point, thence run along a line bearing south 76 degrees, 11 minutes, 18 seconds east a distance of 81.01 feet to a point, thence run along a line bearing south 83 degrees, 57 minutes, 01 seconds east a distance of 23.61 feet to a point and corner, thence run southerly along the said westerly right of way line of Metairie Lawn Drive a distance of 79.72 feet, returning to the point of beginning, including any right of aversion which may accrue by virtue of the expropriation by the State of Louisiana above described.
and further, IT IS ORDERED that the Clerk of Court of the Parish of Jefferson, cancel and erase from his records these documents, and any and all documents recorded by the defendant Myrt Everett, relative to his claims to the above described property."
Defendant is to pay all costs.
Affirmed.