722 So.2d 1192 (1998)
John William HAILE, et al., Plaintiffs-Appellants,
v.
CITY OF MONROE, et al., Defendants-Appellees.
No. 31315-CA.
Court of Appeal of Louisiana, Second Circuit.
December 14, 1998.
Rehearing Denied January 14, 1999.
*1193 Bruscato, Tramontana & Wolleson by Anthony J. Bruscato, Monroe, Counsel for Appellants.
Davenport, Files & Kelly by Mike C. Sanders, Monroe, Counsel for Defendant, Laymon Godwin and New Hampshire Ins. Co.
City Attorney's Office by Nanci S. Summersgill, Monroe, Counsel for Appellee, City Of Monroe.
Cook, Yancey, King & Galloway by Lee H. Ayres, Shreveport, Counsel for Appellees, Northeast Louisiana University Foundation, Riverside Riding Club, Inc., and Insurance Company of Evanston.
Before NORRIS, HIGHTOWER and BROWN, JJ.
HIGHTOWER, Judge.
In this personal injury action, two parents appeal an adverse judgment denying their claim, after their minor child received a nail puncture injury while swinging on a rope near dog training equipment. Finding no manifest error, we affirm.

FACTS
On the afternoon of August 31, 1991, John Wade Haile ("John") and his family attended a "playday" function sponsored by the Riverside Riding Club ("Riverside") at a riding arena owned by the Northeast Louisiana University Foundation ("NLUF"). Riverside leased the arena from NLUF in order for its members to have a place to practice and host "playdays," i.e., equestrian events.
West of the arena, the city of Monroe owned a parcel of mostly vacant land. The northern end of that tract, bordering on the arena, contained dog training equipment built by Monroe city police officers and utilized both by the police department and the Ouachita Parish Sheriff's Office. The southernmost portion of the tract had been leased by the sheriff's office for a firing range.
On the day of the accident, seven-year-old John and two friends began playing on a rope extending between two trees at the dog training site. Trainers had utilized the line for restraining the animals during instruction sessions. While engaged in such play, John received an injury to his left foot when he somehow stepped on a nail protruding from a loose board. A bacterial infection resulted, requiring approximately three weeks in the hospital and four surgical debridement procedures.
John's parents instituted suit in strict liability against the City of Monroe, through the Monroe Police Department, as owner of the tract and the dog training equipment; NLUF, as "owner, ... user, or possessor" of the property; and Riverside in that same capacity. Against the same defendants, as well as the Ouachita Parish sheriff based upon his office's lease or "tacit control" of the property, plaintiffs further asserted negligence claims by alleging these parties allowed an unreasonably dangerous condition to exist. Plaintiffs essentially maintained that the training equipment had been dismantled and boards scattered so as to create an unreasonably dangerous condition.
*1194 The trial court[1] rejected plaintiffs' claims, finding that the evidence preponderantly demonstrated that the equipment had not been dismantled prior to the date of the accident, and holding instead that "the rough play of the three boys caused the ramp to dislodge and a board to come loose ... thereby exposing a nail which pierced John Haile's foot."
Plaintiffs moved for a new trial, claiming error in the ad hoc judge's credibility determinations made from only the transcript and seeking review of Judge Ware's trial notes. Later, plaintiffs amended their motion to assert the discovery of a new witness. After arguments and the submission of evidence on December 18,1997, the trial court denied the motion. This appeal ensued.

DISCUSSION

Unreasonable Risk
Against a private or public entity, when strict liability and negligence are urged as alternate grounds of recovery, the plaintiff must prove that the thing which caused the injury or damage was in the custody of the defendant, that the thing was defective because its condition created an unreasonable risk of harm, that the defendant knew or should have known of the defect and failed to take corrective measures within a reasonable time, and that the defect was a cause in fact of the plaintiff's injuries. La. R.S. 9:2800; Lee v. State, Through DOTD, 97-0350 (La.10/21/97), 701 So.2d 676; Campbell v. State, Through DOTD, 94-1052 (La.01/17/95), 648 So.2d 898; Townsend v. Westinghouse Elevator Corporation, 25,966 (La.App.2d Cir.08/17/94), 641 So.2d 1022, writ denied, 94-2371 (La.11/29/94), 646 So.2d 403. But, under a strict liability approach against a private entity or individual, knowledge of the defect is presumed and the plaintiff is relieved of the burden of proving that element. Townsend, supra.
Under either theory, however, the lack of an unreasonably dangerous condition implies the absence of a duty on the part of the defendant. Id. And, the mere happening of an accident does not engender a presumption that defects are present. Spott v. Otis Elevator Co., 601 So.2d 1355 (La.1992); Townsend, supra. The threshold inquiry presented here, then, is whether plaintiffs have shown that the dog training equipment created an unreasonable risk.
Plaintiffs nowhere contend that the equipment, while still assembled, created an unreasonable risk of injury. In fact, the child's father testified that he "check[ed] the soundness" of the gear five or six months prior to the accident. The equipment "seemed to be okay," and he felt no concern about his children playing on it. Thus plaintiffs' sole claim is that the boards from the previously dismantled devices, left lying under the trees, created an unreasonably dangerous condition.
John testified that, on the day of the accident and at least three times previously, he and two friends played on the equipment. He stated that, prior to the mishap, he had been doing flips on a rope between two trees which necessitated his standing on boards. While "going up" to attempt a flip "the board broke and a nail went through [his] foot." He felt that the boards were rotten. Although the child indicated that scattered lumber had been situated below the trees, his mother confirmed during trial her previous deposition testimony that she saw the equipment still assembled on the day of the incident.
Charles Thompson frequently attended Riverside events with his wife and daughter. Immediately prior to the accident, he saw the three boys "on a little table jumping off and breaking up some stuff there and kicking and stomping 2x4's." He also observed the youngsters turning over a ramp portion of the training equipment and throwing boards into the grass.
Other relevant testimony showed that, when Patrolman William Tarver visited the *1195 site on July 31, 1991, he found the equipment to be in good shape. Later, although unable to specify a date, he discovered the gear had been dismantled. He acknowledged attending a September 20, 1991 rodeo at the NLU arena and could only state that the equipment had been disassembled prior to that date. The disassembling of the training site, he assumed, occurred to facilitate parking for the rodeo. Similarly, Debra Balch, secretary-treasurer of Riverside, observed someone working a dog on the assembled apparatus on Tuesday before the Saturday accident, and also saw the training station in place on August 31, 1991.
A trial court's factual findings are accorded great deference, Lirette v. State Farm Ins., Co., 563 So.2d 850 (La.1990); Adams v. Commercial National Bank in Shreveport, 27,360 (La.App.2d Cir.09/27/95), 661 So.2d 636, and the court of appeal will not reverse such findings if reasonable in light of the record in its entirety. Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993); Adams, supra. Stated otherwise, the issue to be resolved by a reviewing court is not whether the fact-trier is right or wrong, but whether the conclusion reached is a reasonable one. Stobart, supra. Likewise, a successor judge who rules solely on the basis of a transcript is afforded the manifest error standard of review. Shepard v. Scheeler, 96-1690, 96-1720, (La.10/21/97), 701 So.2d 1308.
The record sub judice contains two different versions of the incident. John said that the equipment was dismantled and rotten, while Thompson stated that he saw the boys "roughhousing" and tearing apart the wooden boxes at the site. In view of the broad discretion granted to the trial court in credibility matters, we find no manifest error in the rejection of the child's testimony. Plausible evaluations of credibility and inferences of fact should not be disturbed on appeal. Stobart, supra. Thus, the finding that John and his friends dismantled the equipment on August 31, 1991, is a reasonable determination. As previously stated, Tarver's testimony showed the boards to have been in sound condition as of July 31, 1991; Balch saw the equipment intact both on the date in question and on Tuesday before the Saturday accident; and even Mrs. Haile acknowledged seeing the assembled equipment on August 31. Based upon this evidence, we find no error in the trial court's determination that plaintiffs failed to prove the existence of an unreasonably dangerous condition.
On appeal, for the first time, plaintiffs also complain that the trial court erroneously presumed that the testimony of the two boys who played with John on the accident date, but failed to testify at trial, would be adverse to plaintiffs' case. Contending this presumption "tainted" the district court's determination, appellants request de novo review. The decision reached below, however, does not hang by the thread of an adverse presumption. In light of the other evidence independently supporting the judgment, we do not find further discussion of the issue necessary. As disclosed by our previous analysis, any arguable error would be inconsequential.

New Trial
Appellants also maintain that the district court wrongly denied their motion for new trial predicated upon the difficulties of deciding the case from the transcript and the availability of a new witness. A new trial shall be granted when the judgment is clearly contrary to the law and evidence; when a party has discovered, since the trial, evidence important to the cause which he could not have obtained with due diligence before or during the trial; when the jury has behaved improperly; or, when other good grounds exist. La. C.C.P. arts.1972, 1973.
Plaintiffs first contend that the ad hoc judge, in relying upon a transcript, rendered a decision contrary to the evidence by accepting the testimony of Thompson. The record reflects, however, that plaintiffs joined defendants in moving for the appointment of a judge to render a final judgment. As clearly mandated by La. R.S. 13:4209, where a judge dies after taking a case under advisement, the successor judge shall decide the case from the evidence in the record, if all of the testimony is in writing. Cf. Smith v. Everett, 291 So.2d 835 (La.App. 4th Cir.1974), writ denied, 294 So.2d 827 (La.1974). Because *1196 the ad hoc judge followed these directives in the present case and made a fair interpretation of the evidence as previously discussed, plaintiffs' complaint fails.
Appellants also argued that the deceased judge's notes should have been considered in addressing the new trial motion. But, as previously observed, La. R.S. 13:4209 directs that the successor judge decide the case from the "evidence in the record." Judge's notes obviously are not evidence. In effect, the statute procedurally requires the ad hoc judge to render his final judgment on the case. Hence, any opinion, inclinations, or beliefs possibly gleaned from the prior judge's notes should have no bearing on the successor's view of the evidence.
Plaintiffs next contend that the trial court erred in failing to grant a new trial for the purpose of hearing the testimony of Rocky Tharpe, an alleged newly discovered witness who is said to have carried the child from the injury site. We do not agree, however.
If an application for new trial is predicated upon alleged newly discovered evidence, the moving party bears the burden of proving that the evidence could not have been discovered with due diligence prior to or during the trial, is not cumulative, and would tend to change the result of the case. Barker v. Rust Engineering, Co., 428 So.2d 391 (La.1983); Winford Co., Inc. v. Webster Gravel and Asphalt, Inc., 571 So.2d 802 (La. App. 2d Cir.1990). The granting or denial of a new trial motion rests within the wide discretion of the trial court and its determination shall not be disturbed absent an abuse of that discretion. Taylor v. American Laundry Machinery, Inc., 27,121 (La.App.2d Cir.06/23/95), 658 So.2d 288, writ denied, 95-1877 (La.11/03/95), 661 So.2d 1385; Rosenkrantz v. Baton Rouge Psychological Associates, 94 2340 (La.App. 1st Cir.06/23/1995), 657 So.2d 1353, writs denied, 95-2251, 95-2392 (La.11/17/95), 663 So.2d 707.
In his May 17, 1995 deposition, Thompson stated that he saw a man pick up the injured boy after the incident and bring him toward a nearby concession stand. When the child was asked in his November 10, 1992 deposition if he noticed any other adults in the vicinity of the accident, he mentioned a man cooking hamburgers. Plaintiffs have indicated that, the night before trial, the child observed that the man who picked him up held a spatula.
At trial, John again testified that a man holding a spatula took him up and placed him in the back of a truck. Also, his father's testimony discloses a personal awareness that someone had moved his son after the accident. Both Balch and Lanita Coates, president of Riverside, testified that the Swartz Lion's Club ran the concession stand at the playday event and cooked hamburgers on the day of the accident. Coates stated that Rocky Tharpe was a Lion's club member, and Balch was "fairly sure" that he worked at the stand that day because he usually operated it.
Although due diligence does not require a party to do the impossible to discover evidence, it does require the party to do all that is reasonable to lead to the discovery of evidence. Barker, supra. Prior to and during trial, plaintiffs became aware not only of the existence of a potential witness, but also the possible identity of that individual. Despite this knowledge, plaintiffs made no further attempt to locate Tharpe until after trial.[2] In fact, the motion for new trial only came forth more than 18 months later, after an adverse judgment. Under these circumstances, it would have been reasonable and diligent either to have requested additional discovery before trial or, at least, during trial, to have sought to subpoena the Ouachita Parish resident. Absent such due diligence, we conclude the trial court did not abuse its discretion in denying a new trial.

CONCLUSION
Finding that plaintiffs have failed to demonstrate the existence of an unreasonable risk of harm or their entitlement to a new trial, we affirm the trial court judgment rejecting *1197 their claims. Costs of the appeal are assessed to plaintiffs.
AFFIRMED.
BROWN, J., dissents with written reasons.
BROWN, J., Dissenting,
The judge who tried this case died before rendering a decision. An appointed judge decided the case based on the transcript and improperly applied a presumption that witnesses not called (the other two boys playing with plaintiff) would have testified adverse to plaintiff. Further, believing Charles Thompson, the court found that the boys were playing on dog training equipment (which was properly intact) and that they tore or kicked a board loose exposing a nail which plaintiff stepped on causing his injures. The court did not reach any other issue.
The court denied a motion for new trial. Because of the affidavit of Rocky Thorpe, I think this was clear error. Thorpe's affidavit states that he was cooking hamburgers at the concession stand. This accident occurred immediately behind the concession stand. Thorpe stated in his affidavit that he saw the boys playing under the tree, that there was no dog training equipment under the tree, that he heard a scream and went to the boys, saw the pile of loose boards and the nail, took the injured boy to a car and then he went to the public address announcer to seek the boy's parents and report the injury.
In discovery, the riding club did not disclose that the person who came to report the accident was Rocky Thorpe. In fact, Ms. Coats, the announcer, stated in discovery that she did not know who that person was; however, at trial she identified the person working the concession stand as Rocky Thorpe. In comments during the trial, the trial judge appears to have believed that defendants had not been forthcoming in discovery.
Monroe City Police Officer, William Tarver, believed that the dog equipment had been dismantled and moved before the accident. Thorpe's testimony, as stated in his affidavit, together with Officer Tarver's testimony would significantly change the material facts. I would grant a new trial.

APPLICATION FOR REHEARING
Before NORRIS, HIGHTOWER, BROWN, GASKINS and CARAWAY, JJ.
Rehearing denied.
NOTES
[1] Due to the untimely death of the original presiding judge in the case, Judge Richard N. Ware, the Louisiana Supreme Court appointed Judge O.E. Price as judge ad hoc "for the purpose of hearing and disposing of the matter...." Because Judge Ware had taken the matter under advisement after trial, Judge Price rendered judgment in accordance with La. R.S.13:4209 (A).
[2] Indeed, the record reflects that plaintiffs instead greatly focused their efforts upon pursuing issues such as who owned or controlled the property in question, and/or dismantled the equipment.