I MAMES F. McKAY III, Judge.
In April of 1986, Thomas J. Wagner and Michael Bagot, Jr., left the law firm of Phelps Dunbar to start their own firm, Wagner & Bagot. Chris Martin, who had also been employed at Phelps Dunbar, joined the firm as an associate. In 1988, Mr. Martin was made a partner. In March of 1989, Messrs. Wagner, Bagot and Martin executed a partnership agreement. The partnership agreement set up a tiered compensation scheme under which each partner would receive a guaranteed draw as well as their assigned percentage of “first and second tier” profits. The partnership agreement also established a mechanism for the admission of new partners; Article XI provided that upon admission of a new partner, “a revised agreement supplementary to and amendatory of this Agreement ... shall be executed.” Article XII set forth procedures for the withdrawal of a partner; it specified that within sixty (60) days of withdrawal, the withdrawing partner would be paid the amount of his capital account as of the date of withdrawal plus any amount contributed by the partner upon his admission.
In 1991, Harvey G. Gleason, a partner at the law firm of Chaffe McCall, entered into discussions with Mr. Wagner about the possibility of joining the firm of Wagner & Bagot. Mr. Gleason and Wagner & Bagot entered into an employment agreement under which Mr. Gleason came to work for the firm on a contract basis for a period of six months.[1] The agreement contemplated that at the end of its term Mr. Gleason would either be offered a partnership interest in the firm or the parties would go their separate ways. In the spring of 1992, Mr. Gleason was offered a partnership interest in the firm. During this time frame, Mr. Martin announced his intention to withdraw from the firm and pursue a career as a full-time *33 mediator.[2]
All the parties agree that Mr. Gleason was offered and accepted a 33% partnership interest in the firm. However, the parties disagree as to whether Mr. Gleason agreed to limit the value of his percentage in the firm to $10,000.00 should he withdraw from the firm. Messrs. Wagner and Bagot, on behalf of the firm, contend that a June 16, 1992 memorandum memorialized an overall partnership agreement reached between them and Mr. Gleason. Mr. Gleason contends that the June 16, 1992 memorandum only confirmed some agreements and was an invitation to discuss certain other unresolved issues. In any event, no new partnership agreement, similar to the old partnership agreement which had |sbeen entered into by Messrs. Wagner, Bagot and Martin, was ever prepared or signed by Messrs. Wagner, Ba-got and Gleason.[3]
On May 14, 1997, Mr. Wagner informed Mr. Gleason by memorandum that the arrangement had not worked out and that “it was time to break up.” On July 14, 1997 Wagner & Bagot filed suit against Mr. Gleason seeking, among other things, a declaratory judgment that Mr. Gleason was only entitled to the stipulated sum of $10,000.00 or such other amount allowed by law. On August 13, 1997 Mr. Gleason filed Ms exceptions, answer, reconventional and third party demand in which he sought, inter alia, a liquidation of the law firm. On September 5, 1997, the parties entered into a compromise of all of their differences with the exception of the issue of the value of Mr. Gleason’s interest in the firm.[4] A bench trial was held on November 20, 24, 26 and 27, 1998.[5] On December 19, 2001, the trial court rendered its judgment[6] along with reasons for judgment holding that no written or oral agreement between the parties to limit Mr. Gleason’s equity percentage in the firm upon withdrawal existed. The trial court then applied the default provisions concerning partnership found in the Louisiana Civil Code and ordered the firm to pay Mr. Gleason the fair market value ($228,511.00) of his equity interest at the time of his withdrawal from the firm on August 31, 1997. The judgment and ^reasons for judgment were actually the proposed judgment and reasons for judgment submitted by counsel for Mr. Gleason. It is from this judgment that Messrs. Wagner and Ba-got appeal.
On appeal, Wagner & Bagot raise the following mne assignments of error: 1) the *34 district court erred in failing to recognize that if Mr. Gleason’s acceptance did not conform to the offer of partnership made to him by Messrs. Wagner and Bagot, including the $10,000.00 stipulated sum withdrawal provision, he in effect made a counteroffer which was never accepted and therefore he never acquired an equity interest in the law firm; 2) the district court erred in failing to find that Mr. Gleason tacitly agreed, by his silence over a five year period, to accept a stipulated sum upon his withdrawal or expulsion from the law firm of Wagner, Bagot & Gleason; 3) the district court erred by failing to find that Mr. Gleason was estopped to argue that he did not accept the proposal made to him at the time of his admission to the law firm to accept a stipulated sum upon withdrawal from the firm; 4) the district court erred by failing to find that Mr. Gleason was bound by the withdrawal provisions of an existing partnership agreement he did not sign but which his conduct, testimony, and pleadings undeniably indicate that he believed governed his legal relationship with the firm, and which provided that it would apply to all partners; 5) the district court erred in relying upon article 1947 of the Civil Code; whether the agreement was reduced to writing is immaterial if Mr. Gleason intended to be bound, and if he did not intend to be bound until there was a writing, there was no agreement; 6) if, as the district court found, the valuation | .^provisions of the Louisiana Civil Code applied by default, the verbal agreement between Messrs. Wagner, Bagot and Gleason of necessity created a new legal entity, and therefore, the district court erred in failing to deduct the. value of the predecessor firm in valuing Mr. Gleason’s interest; 7) the district court erred as a matter of law in failing to apply a minority interest discount when valuing Mr. Gleason’s interest; 8) the result reached below is unjust and manifestly erroneous since it awards Mr. Gleason, who contributed no capital upon his admission to the firm, a windfall of over $228,000.00 for his interest where the overall value only increased by $88,000.00 during his tenure; and 9) the district court erred by imposing the burden of proof on Wagner & Bagot. However, the only issues before this Court are whether the trial court erred in finding that there was no agreement between the parties to limit Mr. Gleason to a stipulated value if he withdrew from the firm and whether the trial court erred in ruling that Mr. Gleason was entitled to the value of his percentage share of the partnership as of the date of his withdrawal.
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong” and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even if the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). Even if a case is decided upon a cold record, it is still subject to the manifest error standard. Haile v. City of | Monroe, 31,315 (La.App. 2 Cir. 12/14/98), 722 So.2d 1192. When reasons are provided, a reviewing court must be assured that the thinking process was that of the judge and not an advocate in the lawsuit. Miller v. Smith, 391 So.2d 1263, 1265 (La.App. 1 Cir.1980). Those reasons not supported by evidence in the record are viewed with a “jaundiced eye.” State, DOTH v. August Christina & Bros., Inc., 97-244 (La.App. 5 Cir. 2/11/98), 716 So.2d 372.
Louisiana Civil Code Article 1927 declares that an acceptance may be made “orally, in writing, or by action or inaction *35 that under the circumstances is clearly indicative of consent.” The partnership between Messrs. Wagner, Bagot and Gleason operated exactly as had the partnership between Messrs. Wagner, Bagot and Martin. Furthermore, the law provides that a change in the number or identity of the partners does not terminate a partnership unless the number is reduced to one. LSA-C.C. Art. 2829; See also Hawthorn, Waymouth & Carroll v. Johnson, 611 So.2d 645 (La.App. 1 Cir. 1992). It is apparent to this Court that the March 1989 partnership agreement between Messrs. Wagner, Bagot and Martin also controlled the relationship between Messrs. Wagner, Bagot and Gleason. On June 9, 1997, Mr. Gleason authored a memorandum to his partners invoking the provisions of the March 1989 partnership agreement. He wrote: “since I have dont (sic) nothing to invoke the provisions of expulsion [Article XX of the March, 1989 partnership agreement] under the partnership agreement, we need to discuss and agree on the amount to be paid to me.” In his “Exceptions, Answer and Reconven-tional and Third Party Demand” filed on August 18, 1997, Mr. Gleason 17alleged, at Article 56, that “it was assumed that the previous written partnership agreement between Messrs. Wagner, Bagot and Chris Martin would control.” It is interesting to note that on March 26, 1993, Messrs. Wagner, Bagot and Gleason executed a document entitled “Addendum to Partnership Agreement.” At trial, when the court asked Mr. Gleason “[c]an you do an addendum to an agreement that doesn’t exist?,” he responded: “[p]robably not.” Louisiana Civil Code Article 2053 mandates that contracts be interpreted “in light of the nature of the contract, equity, usages, the conduct of the parties before and after formation of the contract, and of other contracts of a like nature between the same parties.”
In the instant case, the trial court was clearly wrong to award Mr. Gleason $228,511.00 or what it deemed to be the fair market value of his equity interest in the firm at the time of his withdrawal. The trial court’s decision to award Mr. Gleason $228,511.00 for his interest in a firm that had only increased in value by $88,492.00 during his tenure there was also manifestly erroneous. The $10,000.00 withdrawal provision also does not apply. There is clear evidence in the record that the parties never agreed to this amount.
According to the March 1989 partnership agreement, when a partner withdraws he should receive the amount of his capital account and any contribution he made upon admission to the firm. At trial, Mr. Gleason’s expert testified that based upon the cash accounting method provided for in the March 1989 partnership agreement the value of Mr. Gleason’s capital account was $48,807.00; Messrs Wagner and Bagot now concede that this is an accurate | Rmeasure of Mr. Gleason’s capital account. At the time of Mr. Gleason’s admission as a partner, he was owed $31,342.99 under the previous employment contract. He waived this amount in order to become a partner. Therefore, this amount should be considered as a contribution made by Mr. Gleason upon his admission to the firm. Accordingly, upon Mr. Gleason’s withdrawal from the firm, he should have received the amount of his capital account ($48,-807.00) and any contribution he made upon admission to the firm ($31,342.99); this comes to a total of $80,149.99.
For the foregoing reasons, the judgment of the trial court is reversed and we render judgment as follows. We hold that Wagner & Bagot owe Harvey Gleason $80,149.99, plus interest on this amount at the legal rate from August 31, 1997 until *36 paid and all costs of these proceedings as well as those below.[7]
REVERSED AND RENDERED.

. Mr. Gleason's compensation was set at 65% of the amount of fees collected in files brought to the firm by Mr. Gleason and over which he had primary responsibility plus 10% of all firm distributions of profit. This compensation scheme was subject to a guaranteed income of at least $6,000.00 per month.

. Mr. Martin's withdrawal raised issues concerning the amounts he was to receive upon withdrawal under Article XII of the partnership agreement; a literal application of Article XII would have required him to pay monies to the firm upon withdrawal. However, it was agreed that he would accept $7,000.00, $1,000.00 more than he had contributed in capital.

. On February 21, 1994, Mr. Wagner wrote a letter to accountant, Jane Dimitry, seeking certain advice regarding the firm’s partnership agreement. The letter states: "We have apparently not revised it since the time of Chris Martin’s departure nor have we included the addition of Harvey Gleason." The letter goes on to state: "we have discussed stipulating Harvey Gleason’s interest in the firm at a set value of $20,000 which would be the amount he would be paid should he withdraw from the firm at any point.”

. The agreement provided that Wagner & Ba-got would pay Mr. Gleason $10,000.00 together with $3,750.00 per month for three months. The parties stipulated that these payments would be credited against any judgment rendered by the court.

. The case was tried before Judge Ronald Sholes.

. Before judgment was rendered in this matter, Judge Sholes resigned from the bench; the judgment was rendered by Judge Lloyd Medley.

. Wagner & Bagot are entitled to a credit for those amounts already paid.