935 So.2d 783 (2006)
REYNOLDS INDUSTRIAL CONTRACTORS, Plaintiff-Appellee
v.
Willie Faye FOX, Defendant-Appellant.
No. 41,051-WCA.
Court of Appeal of Louisiana, Second Circuit.
June 28, 2006.
*785 Lacey P. Wallace, Bossier City, for Appellant.
Snellings, Breard, Sartor, Inabnett & Trascher, L.L.P., by Donald J. Anzelmo, Monroe, for Appellee.
Before STEWART, GASKINS, CARAWAY, DREW and MOORE, JJ.
CARAWAY, J.
The employee was injured in January 1996 when a hammer fell on her foot as she assisted another employee in moving tools out of an office. Workers' compensation wage benefits were paid to the employee through September 2001. The employer and employee then filed disputed claims for benefits which were consolidated for hearing. A judgment of the Office of Workers' Compensation was rendered based upon a forfeiture of the employee's benefits due to false statements in furtherance of the employee's claim. Finding manifest error in the forfeiture determination, we reverse that portion of the judgment forfeiting benefits, award supplemental earnings benefits of $150.00 per week and affirm the denial of penalties and attorney fees.

Facts
On January 26, 1996, Willie Faye Fox ("Fox") was working as a secretary for Reynolds Industrial Contractors ("Reynolds"). The company was completing a construction project in Chopin, Louisiana. As Fox assisted another employee move tools out of an office, a sledge hammer fell off of a tray onto her right foot. Fox received medical treatment for her injuries and returned to work on crutches. She worked for Reynolds until February 10, 1996, when the project was finished. Reynolds knew her employment would end before her injury occurred.
In July of 1996, Fox had surgery on her foot for the removal of bone chips. Thereafter she was referred to physical therapy and pain management. Ultimately, Fox was diagnosed with Reflexive Sympathetic Dystrophy ("RSD")[1] and received several sympathetic nerve blocks, but these failed to provide relief. She was referred to Dr. Kathleen Majors of Pain Management Consultants in February of 1999. Dr. Majors ultimately released Fox to perform sedentary work with some restrictions including elevating her right foot, but she never returned to any employment.
For her injuries, Reynolds paid Fox temporary total disability benefits through November 1, 1997, and then supplemental earnings benefits ("SEBs") through September 30, 2001. On November 26, 2001, Reynolds filed a disputed claim under La. R.S. 23:1208 seeking forfeiture of any further benefits for alleged false statements and misrepresentations made by Fox in furtherance of a claim for benefits. In October 2002, Fox countered with a disputed claim for compensation seeking reinstatement of wage and medical benefits. Fox also sought penalties and attorney fees based upon Reynolds' allegedly erroneous *786 calculation of her average weekly wage. The consolidated claims were tried on July 30, 2003. Two years later, the workers' compensation judge ("WCJ") rendered written reasons and a judgment requiring the forfeiture of any further benefits after September 30, 2001 and denying Fox's claim for penalties and attorney fees.
Regarding forfeiture, the WCJ determined that Fox "had misrepresented the extent of her disability on numerous occasions" and the "nature of her employment with Reynolds" and willfully made "false statements about accidents that occurred after the work incident." The WCJ determined that forfeiture was warranted and denied Fox's request for further benefits. The WCJ also determined that Reynolds miscalculated Fox's benefits because it erroneously treated Fox as a seasonal employee. The court recalculated the benefits on the basis of Fox's full-time temporary employment and awarded Fox the difference for the period between February 10, 1996 and September 30, 2001. Fox appeals.

Discussion
On appeal, Fox shows that the WCJ's opinion in this case was rendered 736 days after trial because the record was lost and had to be reconstructed. Because of this, Fox requests de novo review. Fox also argues that the WCJ erroneously determined forfeiture of her benefits and erred when it denied her penalties and attorney fees after the underpayment of benefits between 1996 and 2001.
In brief, both parties apparently concede that the final judgment was based upon a reconstructed record and trial transcript and was rendered almost two years after trial. Fox contends that the workers' compensation judgment, which was based upon a "very cold file," deprived her of substantial rights and entitles her to de novo review by this court.
Factual findings in workers' compensation cases are subject to the manifest error/clearly wrong standard of review. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706; Smith v. Riverwood International, 35,727 (La. App. 2d Cir.2/27/02), 810 So.2d 1175, writ denied, 02-0958 (La.5/31/02), 817 So.2d 101. The courts have consistently held that the manifest error standard applies upon appeal in workers' compensation actions, even though the evidence before the trier of fact may consist solely of written reports, records and depositions. Virgil v. American Guarantee and Liability Ins. Co., 507 So.2d 825 (La.1987); Feild v. General Motors Corp., 36,339 (La.App. 2d Cir.9/18/02), 828 So.2d 150. See also, Shephard on behalf of Shephard v. Scheeler, 96-1690 (La.10/21/97), 701 So.2d 1308; McGill v. Cochran-Sysco Foods, 35,898 (La.App. 2d Cir.5/8/02), 818 So.2d 301, writ denied, 02-1609 (La.9/30/02), 825 So.2d 1196; Haile v. City of Monroe, 31,315 (La.App. 2d Cir.12/14/98), 722 So.2d 1192; Darbonne v. Wal-Mart Stores, Inc., 00-551 (La.App. 3d Cir.11/2/00), 774 So.2d 1022. The jurisprudence has likewise not allowed for de novo review of the lower court's determinations because of the court's lengthy delay in making credibility judgments and rendering judgment. Rosenblath's Inc. v. Evans, 628 So.2d 1149 (La.App. 2d Cir.1993), writ denied, 94-0384 (La.4/4/94), 635 So.2d 1125; Manson v. City of Shreveport, 577 So.2d 1167 (La. App. 2d Cir.1991), writ denied, 580 So.2d 928 (La.1991). Even in situations where a different fact-finder judge has been assigned to render judgment from a trial record received before another judge, de novo review by the court of appeal has been deemed inappropriate. Shephard on behalf of Shephard v. Scheeler, supra.
In view of this jurisprudence, the de novo review requested by Fox is not the *787 correct standard. The matter will be reviewed under the manifest error standard.
Fox next argues that the WCJ erroneously determined that she made false statements which justified the forfeiture of benefits and denied her additional SEBs. In pertinent part, La. R.S. 23:1208 provides:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * *
D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers' compensation judge of not less than five hundred dollars nor more than five thousand dollars, and may be ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct.
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
This statute authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. The statute applies to any false statement or misrepresentation made willfully by a claimant for the purpose of obtaining benefits. All of these requirements must be present before a claimant can be penalized. Freeman v. Triad Builders, 39,657 (La.App. 2d Cir.5/11/05), 902 So.2d 1220, writ denied, 05-1562 (La.12/16/05), 917 So.2d 1118. Because statutory forfeiture of workers' compensation benefits for willfully making a false statement for the purpose of obtaining benefits is a harsh remedy, it must be strictly construed. Risk Management Services v. Ashley, 38,431 (La.App. 2d Cir.5/14/04), 873 So.2d 942, writ denied, 04-1481 (La.9/24/04), 882 So.2d 1138. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. An inadvertent and inconsequential false statement would not result in the forfeiture of benefits. Jim Walter Homes, Inc. v. Prine, 01-0116 (La.App. 1st Cir.2/15/02), 808 So.2d 818; Rosson v. Rust Constructors, Inc., 32,789 (La.App. 2d Cir.3/1/00), 754 So.2d 324, writ denied, 00-0914 (La.5/26/00), 762 So.2d 1105. Determinations of misrepresentations for forfeiture of benefits under La. R.S. 23:1208 are governed by the manifest error/clearly wrong standard of review. Freeman v. Triad Builders, supra. Under this standard, if the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart v. State through Dept. of Transp. & Development, 617 So.2d 880 (La.1993).
The very general nature of the WCJ's written explanation for forfeiture is shown in the quotes from that sparse ruling which are listed above. Accordingly, we will focus our review on those instances of alleged misrepresentations by Fox which *788 may support the ruling.[2] In proof of its claims, Reynolds submitted into evidence certain medical reports of Fox and video surveillance and written reports describing Fox's activity on the tapes that allegedly disproved her complaints.[3] Fox was the only live witness at trial.
One instance of alleged misrepresentation occurred in September of 2001. At that time, pursuant to Office of Workers' Compensation procedure, Fox was referred to Spectrum Rehabilitation Center for a functional capacity evaluation ("FCE"). Fox previously had an FCE in April of 1998. Fox's self-reported behavioral pain evaluation on September 20, 2001, reported that "she walks with a cane because of additional pain when putting full weight on the extremity." Fox evidently had feelings of worthlessness and low self-esteem because she could "never go anywhere." The occupational therapy evaluation, also on September 20, 2001, reported that Fox's shopping difficulties were "a nightmare," and that she could only perform such tasks with her husband's or grandson's help. She also experienced difficulty driving because she only has the use of her left foot. Fox was unable to complete the FCE scheduled for September 26, 2001. The report stated that "approximately two thirds of the way into the test the patient began to get irritated and stated that she had strict orders from her Dr. that she was never again to take this type of testing. At this time the test was discontinued. The patient then produced a script from Dr. Majors, dated 10-9-00, which stated she did not need to finish the FCE." The report further described the termination point of the test as follows: "the test was terminated after the patient had begun the walking portion of the test. She walked with her cane for a total of 71.6 seconds before sitting down."
At trial, Fox testified that she stopped the test because of pain. She introduced an August 14, 2000 letter which included Dr. Majors' note describing Fox's status as to maximum medical improvement and work restrictions. Dr. Majors' notation showed that she did not think Fox needed the FCE. Dr. Majors' deposition clarified that Fox's work restriction necessitated elevating her foot approximately six inches to alleviate swelling from the RSD.
To dispute Fox's representations, Reynolds introduced video surveillance conducted between December of 1999 and May of 2002. The surveillance occurred on 21 different days and on many of those days Fox remained totally in her home. The videotape near the time of the FCE showed Fox walking without a cane and performing errands, including shopping, without assistance. However, they also showed Fox using a cane when she visited her lawyer and attended her grandson's school function. When questioned, Fox admitted that she could sometimes shop alone and walk without her cane in September 2001.
Another issue developed at trial concerned Fox's reporting of prior accidents in her discovery deposition. The only accident relevant to her injured foot was a 1997 automobile accident.[4] Fox was a passenger *789 in an automobile driven by her niece which rear-ended another vehicle. Neither one sought medical attention for any injuries. In her deposition, Fox was asked whether "the only accident you've ever been involved in that resulted in a need for medical treatment was the accident of January 26, 1996?" Fox apparently responded to the question by describing a serious automobile accident which totaled her car sometime during the 1970's. Fox failed to identify the 1997 automobile accident involving her niece.
Significantly, Reynolds showed through the medical records that while Fox did not seek medical attention for the May 14, 1997 accident, she later did discuss the accident with Dr. James Lillich and Dr. Gordon Mead because of the accident's effect on her foot. Dr. Lillich had apparently been Fox's treating physician relating to the work accident. Fox had later been referred to Dr. Mead for a second opinion on her foot on April 30, 1996. On May 27, 1997, she visited Dr. Lillich and reported to him that she had been involved in a minor motor vehicle accident and "had to place her foot down forcefully." Fox reported that she "felt a pop and sudden pain but then much of the plantar pain that she previously experience[d] began to resolve." Dr. Lillich concluded that she had apparently "ruptured some of the fibrous tissue around the FHL tendon which has currently improved some of her motion." In Dr. Mead's June 1997 notes, he reported that Fox mentioned the accident and told to him that she "injured her right foot at that time. She felt a pop in her foot when this occurred. She had quite a bit of pain in the foot, but by the time she went to bed that night, her pain was less than it had been for awhile."
With the test for forfeiture requiring proof of willful intent and strict construction, we do not find that Reynolds established a forfeiture of benefits in this case. Significantly, despite the Reynolds' surveillance evidence, which showed Fox's actions for almost two years prior to the time Reynolds ceased paying SEBs, the WCJ's judgment did not require forfeiture of those SEB payments, but instead actually raised the amount of those payments through September 2001. Our finding of insufficient evidence for forfeiture does not mean that some of the credibility issues presented by Fox's testimony and actions are not pertinent concerning the issue of her continued entitlement to SEBs and her ability to work, as we will discuss below. It simply means that the two incidents described above involving Fox's statements, which were by no means clear misrepresentations, do not amount to evidence of willful intent for the improper continuation of payment of SEBs.
At the time of the September 2001 FCE, it is significant that Fox was receiving SEBs and had been receiving maximum wage benefits for over five years. There is no evidence that Reynolds was threatening to end those benefits so that a fraudulent ploy by Fox was necessary for the continuance of SEBs. An FCE was previously conducted, and Fox was irritated that the present evaluation was taking place contrary to the views of her physician. Fox's maximum medical improvement had been reached and this status had apparently gone unchallenged. With the burden of proof on Reynolds regarding this alleged willful deception at the FCE, no testimony was presented from the medical personnel describing the walking test or Fox's presentation and statements. Under those conditions, while Fox may be viewed as uncooperative, her actions do *790 not amount to misrepresentation with the willful motive for obtaining benefits.
Moreover, we are not persuaded by the video surveillance. The video does not show substantial physical activities by Fox. There are times when she used the cane; there are times when she did not. Considering the description in the medical testimony of Fox's RSD syndrome, which, according to the physician, may wax and wane, she was not diagnosed with constant pain that would necessarily curtail her actions seen on the tape. The tapes, Fox's statements and actions at the FCE, and her testimony at trial do present significant credibility issues concerning her ability to work or receive SEBs. Nevertheless, this body of evidence is not atypical for many SEB work disputes involving subjective pain assessment. While this requires a credibility assessment by the WCJ for any alleged exaggeration of pain, malingering, or downplaying of work abilities by the employee, the willful misconduct justifying forfeiture consists of more than just a credibility call.
With regard to Fox's deposition testimony, the question presented to Fox in the deposition asked for information regarding past accidents which caused "a need for medical treatment." Fox did not seek medical attention for the accident. Her later descriptions to her doctors of the accident's impact on the condition of her foot do not amount to evidence suggesting that her foot pain has persisted in any manner because of that accident. Without proof from the deposition that clearly demonstrates deception and without an incident that would arguably remove the cause of Fox's condition from this work-place accident, forfeiture was not established by this testimony. This conclusion overruling the WCJ's judgment of forfeiture requires our determination of Fox's entitlement to supplemental earnings benefits.
A claimant is entitled to receive SEBs if he sustains a work-related injury that results in the inability to earn 90% or more of his pre-injury wage. La. R.S. 23:1221(3)(a). The claimant bears the initial burden of proving, by a preponderance of the evidence, that the injury resulted in the inability to earn that amount, under the facts and circumstances of the case. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733. If the claimant meets this burden, the burden then shifts to the employer to prove that the claimant is physically able to perform a certain job and that the job was offered to the claimant or that the job was available to him or within his or the employer's geographic region. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551. If the employer satisfies that burden, then the claimant must show by clear and convincing evidence, unaided by any presumption of disability, that he is unable to perform the offered or available employment, solely as the result of substantial pain. La. R.S. 23:1221(3)(c)(ii); Payne v. Lawn Lourd Lawn Service, 35,491 (La.App. 2d Cir.12/5/01), 803 So.2d 321.
Through Dr. Majors' deposition testimony, Fox presented the only medical testimony at trial in proof of her entitlement to SEBs. Fox's testimony also commented upon her ability to return to employment. Reynolds presented no medical evidence other than Fox's medical records in opposition to the claim for additional benefits. No medical opinion was presented to dispute the opinion of Dr. Majors.
Dr. Majors indicated that Fox had reached maximum medical improvement by August 2000 and should have been able to return to work with restrictions. Fox initially testified that Dr. Majors had not released her to any type of work activity. She then qualified that statement, conceding *791 that Dr. Majors did allow her to do "like restricted, like secretarial work or something like that with restrictions and stuff like that." Fox ultimately conceded that Dr. Majors told her to relax and elevate her leg and foot because she had muscle spasms in her leg when sitting for a long period of time. In her deposition, Dr. Majors confirmed that she had released Fox to sedentary type work with the requirement that she elevate her foot approximately six inches to help with swelling relating to RSD in August of 2000. With these restrictions, Dr. Majors recommended that Fox begin a light duty part-time job, working four to six hours a day and gradually increasing hours. She recommended re-evaluating Fox after a four to six-week period of part-time activities.
It is important that Fox's medical condition was based largely upon the subjective representations of Fox, which the WCJ rejected as self-serving and lacking credibility. Dr. Majors' deposition clearly establishes Fox's ability to return to light duty sedentary employment with a minor foot restriction, initially at a part-time level for a four to six week period. Fox's questionable credibility and the lack of proof of her inability to work full-time after the six week term precludes any additional award of benefits after the six week period. On this record, we therefore find that Fox has only established an inability to earn 90% of her pre-accident wages for a six week period. In her post-trial brief, Fox conceded her entitlement to weekly SEBs of $316.00 as a temporary employee.[5] With Dr. Majors' testimony that Fox could work at least half days at a sedentary job, we find the sum of $150.00 per week for six weeks to be an appropriate award.[6]
Finally, Fox also claims an entitlement to penalties and attorney fees for the underpayment of benefits due to Reynolds' erroneous classification of her as a seasonal rather than temporary employee. The WCJ found that whether Fox was a seasonal or temporary employee was a close factual issue.
The relevant provisions of La. R.S. 23:1201(F), as it read during Fox's receipt of benefits, provided as follows:[7]
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that *792 the penalty and attorney fees are to be paid by the employer rather than the insurer.
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
An employee has the burden of proving his entitlement to statutory penalties for the employer's failure to timely pay workers' compensation benefits. Williams v. Mark Johnson Plumbing, 38,954 (La.App. 2d Cir.9/22/04), 882 So.2d 1193; Bolton v. Mike Fleming Const., 36,521 (La.App. 2d Cir.12/11/02), 833 So.2d 1177. To reasonably controvert a workers' compensation claim so as to avoid imposition of penalties and attorney fees, the employer and its insurer must provide sufficient factual and medical information to reasonably counter the evidence provided by the claimant. Id. To meet this standard, the employer must have some "valid reason or evidence upon which to base his denial of benefits." Feild v. General Motors Corp., supra. The court must determine whether the employer "engaged in a non-frivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." Id. The defendant must have some valid reason or evidence upon which to base his denial of benefits. Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885. Penalties are stricti juri and should be imposed only when the facts clearly negate good faith and just cause in connection with the refusal to pay. Bolton v. Mike Fleming Const., supra. The WCJ has great discretion in deciding whether to award or deny penalties and attorney fees and such decision will not be disturbed absent abuse of that discretion. Williams v. Mark Johnson Plumbing, supra; Fisher v. Lincoln Timber Co., 31,430 (La.App. 2d Cir.1/24/99), 730 So.2d 973.
In support of its classification of Fox as a seasonal employee, Reynolds submitted the testimony of Carolyn Pullman, Reynolds' Human Relations and Safety Manager. Pullman testified that Fox worked for Reynolds from November 1995 to February 10, 1996.
The record shows that Reynolds was a construction company that performed work necessitating frequent relocation of company operations to different job sites. At the time of the accident, Reynolds' work was being performed at a plywood plant owned by another company, and Fox lived nearby. Fox understood that Reynolds' next job might be in Arkansas.
Because of the nature of its work, Reynolds classified Fox as a seasonal employee. Certainly, the construction business is dependent upon the existence of work and weather conditions, and Fox's employment as a secretary could have been only short-term due to her residence near the temporary job site. Therefore, the classification of Fox as seasonal under these circumstances, while erroneous, is not without any basis of support. Without Fox presenting any evidence that she contested this classification during the period she received benefits, or that Reynolds frivolously classified her as such, we can discern no abuse of discretion in the WCJ's determination.

Conclusion
For the foregoing reasons, we reverse that portion of the judgment forfeiting Fox's benefits and award her $150.00 weekly supplemental earnings benefits for a six week term. The remainder of the judgment denying Fox's request for penalties and attorney fees is affirmed. Costs of this appeal are assessed to Reynolds.
*793 JUDGMENT REVERSED IN PART, MODIFIED IN PART AND AFFIRMED IN PART.
MOORE, J., dissents with written reasons.
DREW, J., dissents for the reasons assigned by Judge MOORE.
MOORE, J, dissents.
I respectfully dissent. The majority correctly cites the principle that factual findings of the WCJ are subject to manifest error review. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706. Under this standard, "reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." Dean v. Southmark Const., XXXX-XXXX (La.7/6/04), 879 So.2d 112, 117 (emphasis added). In effect, the appellate court is not free to substitute its own view of the evidence for that of the WCJ, but the majority has apparently done so in this case.
The majority concedes that Ms. Fox made a false statement on a "self-reported pain evaluation" and refused to complete a functional capacity evaluation in September 2001; both of these were plainly inconsistent with the unrestricted physical activity captured on videotape between December 1999 and May 2002 and with the earlier report from Dr. Majors. The WCJ found that Ms. Fox's actions spoke louder than her words, and I would not disturb that assessment.
The majority also concedes that in a 2002 deposition, Ms. Fox failed to report an automobile accident that occurred after her work-related injury, but decides this was not made "willfully" and for the purpose of obtaining benefits. The majority minimizes Ms. Fox's failure to report yet another injury (sustained while gardening) after her work-related accident, as well as conflicting statements about whether her employment with Reynolds was temporary (according to her deposition) or permanent (as she testified at trial). When all these facts are properly considered, a pattern or syndrome of untruthfulness emerges which adequately supports the WCJ's finding of a forfeiture under R.S. 23:1208.
The forfeiture statute is harsh and must be strictly construed. Wise v. J.E. Merit Constructors Inc., 97-0684 (La.1/21/98), 707 So.2d 1214. Even so, this court should not reverse the WCJ's findings unless they are manifestly erroneous. Graham v. McKinney Nissan, 39,656 (La.App. 2d Cir. 6/29/05), 907 So.2d 213; Brown v. International Paper Co., 38,892 (La.App. 2d Cir. 9/22/04), 882 So.2d 1228, writ denied, 2004-2865 (La.1/28/05), 893 So.2d 78. In my view, the evidence was sufficient to support the forfeiture. I would affirm the judgment.
NOTES
[1] This condition is also known as Chronic Regional Pain Syndrome.
[2] Reynolds' original claim related only to the false statements made to health care providers prior to Reynolds' discontinuance of wage benefits in September 2001. However, at trial, Reynolds sought to impeach Fox by her testimony from a discovery deposition in which she failed to report injury in an automobile accident discussed infra, and the WCJ listed that purported impeachment as the primary basis for its forfeiture determination.
[3] The parties stipulated to the testimony of the videographer.
[4] The WCJ's ruling may have also alluded to Fox's reporting of a gardening "accident" that caused Fox injuries unrelated to her work injury.
[5] This amount was calculated based upon a computation of 2/3 of her average weekly wage ($474.22) for the four weeks preceding the accident.
[6] Fox is not barred from seeking a modification of this award for prospective benefits due to any relevant change in her condition. La. R.S. 23:1310.8; Jackson v. Iberia Parish Government, 98-1810 (La.4/16/99), 732 So.2d 517.
[7] The penalty provisions in effect at the time of the alleged error control. Gay v. Georgia Pacific Corp., 32,653 (La.App. 2d Cir.12/22/99), 754 So.2d 1101.