DREW, J.
Lin this long-running dispute which has included a 2003 trial and three appeals, Willie Faye Fox appeals a judgment denying her claim for additional Supplemental Earnings Benefits (“SEB”). We affirm.
FACTS
Fox began working as a secretary for Reynolds Industrial Contractors on a construction project at a plywood mill in October of 1995. She was injured on January 26, 1996, when a sledgehammer fell on her foot. Despite her injury, Fox continued to work until early the next month. Her job was scheduled to terminate later in February.
Fox was diagnosed as having reflex sympathetic dystrophy (“RSD”) of her right lower extremity. Dr. James Lillich, an orthopedic surgeon, operated on her right foot. She was referred to Dr. Ross Nelson, a pain management doctor, who administered injections to her foot. In 1999, Dr. Kathleen Majors, Dr. Nelson’s partner, began treating Fox approximately every three months for the next 13 years. Dr. Majors pronounced Fox at maximum medical improvement in August of 2000. Fox I
Reynolds paid total disability benefits to Fox until November 1,1997, and then SEB until September 30, 2001. On November 27, 2001, Reynolds filed a disputed claim asserting that Fox had forfeited her right to benefits after September 30, 2001, by making false statements and representations in violation of La. R.S. 23:1208. On October 29, 2002, Fox filed a disputed claim seeking reinstatement of benefits.
li>Dr. Majors was deposed on July 21, 2003. As of August 2000, she thought Fox could perform sedentary work with her right foot propped up six inches on a padded footrest. Dr. Majors believed that it would be best for Fox to begin by working with those restrictions for four hours a day and then increase her workday to six hours. Dr. Majors wanted to reevaluate Fox after she performed this part-time work for four to six weeks.
Dr. Majors never had the opportunity to reevaluate Fox prior to trial on the forfeiture and reinstatement issues as the trial was held on July 30, 2003, nine days following her deposition. Judgment was not rendered until August of 2005 because the record had to be reconstructed after it was misplaced. The WCJ ruled that Fox had forfeited her right to further benefits. The WCJ specifically noted that Fox had misrepresented the extent of her disability numerous times, made false statements about subsequent accidents, and misrepresented the nature of her employment with Reynolds.
Fox appealed. In Reynolds Industrial Contractors v. Fox, 41,051 (La.App.2d Cir.6/28/06), 935 So.2d 783, this court, after concluding that Reynolds had not established a forfeiture of benefits, reversed the judgment insofar as it dismissed Fox’s claim for further benefits. Of significance *108 for purposes of this appeal is that when this court considered the forfeiture issue, it stated that surveillance tapes, Fox’s testimony at the 2003 trial, and her statements and actions at a functional capacity evaluation presented “significant credibility issues concerning her ability to work or receive SEB.” Id. at p. 12, 935 So.2d at 790.
|,^Nevertheless, this court found that Fox was entitled to six weeks of SEB, noting in a footnote that under La. R.S. 23:1310.8, she was not barred from seeking a modification of the award for prospective benefits due to any relevant changes in her condition. In explaining why the award of SEB was being limited to six weeks at that time, this court stated:
It is important that Fox’s medical condition was based largely upon the subjective representations of Fox, which the WCJ rejected as self-serving and lacking credibility. Dr. Majors’ deposition clearly establishes Fox’s ability to return to light duty sedentary employment with a minor foot restriction, initially at a part-time level for a four to six week period. Fox’s questionable credibility and the lack of proof of her inability to work full-time after the six week term precludes any additional award of benefits after the six week period. On this record, we therefore find that Fox has only established an inability to earn 90% of her pre-accident wages for a six week period.
Emphasis added. Id. at p. 14, 935 So.2d at 791.

Fox II

On July 12, 2007, Fox filed a disputed claim seeking indemnity benefits, all reasonable and necessary medical treatment, penalties, and attorney fees. In- response, Reynolds filed the exceptions of prescription and res judicata.
While the exceptions were pending, Dr. Majors was deposed for a second time on June 24, 2008. She testified that Fox’s condition was basically unchanged since 2003, and that she believed the restrictions she had given earlier were now permanent.
On August 5, 2008, the WCJ rendered judgment granting the exception of res judicata. The exception of prescription was not ruled upon in light of the finding of res judicata. Fox appealed.
| ¿This court affirmed the judgment sustaining the exception of res judicata as to the claim for modification of medical benefits, which were not awarded in Fox I. However, this court found that Fox’s claim for SEB for the period of time following the trial of her first claim and after satisfaction of the six-week SEB award was not barred by res judicata. Accordingly, this court reversed the judgment sustaining the exception of res judicata as to the claim for modification of indemnity benefits. The matter was remanded for consideration of the exception of prescription against the claim for indemnity benefits. This court noted that as its review was limited to the issue of res judicata, it was not making any determination whether Fox could carry her burden of proving a change in condition based on an extended duration of disability at trial. Fox v. Reynolds Indus. Contractors, 44,938 (La. App.2d Cir.1/27/10), 33 So.3d 895, writ denied, 2010-0676 (La.5/28/10), 36 So.3d 250. On remand, the WCJ denied the exception of prescription.

Fox III

Reynolds filed the exception of no cause of action, or alternatively, a motion for summary judgment. It argued that under La. R.S. 23:1221(3)(d)(i), Fox’s right to any additional SEB had terminated. The WCJ granted the exception and, in the alternative, the motion for summary judgment. *109 Fox appealed. Reynolds also appealed the denial of its exception of prescription.
This court reversed the judgment granting the exception of no cause of action or, alternatively, the motion for summary judgment. The judgment denying the exception of prescription was affirmed. The matter was remanded for trial on the issue of whether Fox was entitled to a modification 1 Bof her SEB award. Fox v. Reynolds Indus. Contractors, 46,695 (La.App.2d Cir.11/16/11), 79 So.3d 1140.

Round Four

Trial was held on July 17, 2012. Fox testified that she began working part-time as a bookkeeper for her sister in January of 2006. She usually worked only a couple of hours for her sister, but sometimes worked as many as eight hours a day. It was the only time she earned wages since she worked for Reynolds. She earned $50 in January of 2006, and $37.50 in February of 2006.
The WCJ recognized that the only issue before it was whether Fox was entitled to additional indemnity benefits beyond the six weeks of SEB awarded in Fox I. The WCJ concluded that Fox failed to prove by a preponderance of the evidence that she was entitled to additional benefits.
The WCJ noted that Dr. Majors had restricted Fox to sedentary duty, but had agreed that clerical duty, such as what she had performed for Reynolds and for her sister, fit within that restriction. She earned $8 per hour, and while normally working only a few hours at a time, she sometimes worked up to eight hours per day for her sister if work was available.
The WCJ rejected Dr. Majors’ extension of the part-time work restriction beyond six weeks as lacking an adequate foundation because Dr. Majors first learned that Fox had returned to clerical work when she was deposed in 2008. The WCJ reasoned that Dr. Majors’ ability to evaluate Fox’s tolerance for work beyond four to six hours per day was limited by her lack of information. The WCJ also noted that Dr. Majors’ opinion regarding Fox’s ability to work was contradicted by other activities that Fox had | (¡engaged in, such as driving over 100 miles, grocery shopping, fishing, regular exercise, and performing household chores including feeding dogs, caring for horses, and tending to a rose garden.
The WCJ believed that the evidence generally showed improvement in Fox’s condition since the 2003 trial. She no longer needed drugs for breakthrough pain and had not had nerve block injections since 2003. Her pain was worse at night, which presumably minimized the impact of her condition on her ability to work during the day. She had not used a cane for several years, and while she complained of ongoing cramping or muscle spasms, those complaints were not documented in her medical records.
The WCJ did not consider Fox to be a particularly credible witness, and thought she was unduly combative and evasive during cross-examination. The WCJ noted that Fox misrepresented to her doctor the amount of exercise she performed in order to avoid criticism from the doctor. Finally, the WCJ saw nothing at trial that indicated any substantial limitation in Fox’s ability to earn a wage as she testified at length without any apparent pain that would limit her ability to perform clerical work similar to what she did before and after the accident.
DISCUSSION
The only issue at trial was whether Fox was entitled to a modification of the prior award of six weeks of SEB. La. R.S. 23:1310.8(B) permits a WCJ to modify an award based on a change in condition. Fox was required to prove a change in her *110 condition by a preponderance of the evidence. See Luquette v. Self, 2012-112 (La. App. 3d Cir.6/13/12), 94 So.3d 930.
|7In Bordelon v. Vulcan Materials Co., 472 So.2d 5 (La.1985), the supreme court examined the provisions of La. R.S. 23:1331, which was the modification statute in effect at the time. It provided that a compensation judgment could be modified at the request of either party on the ground that the “incapacity of the employee has been subsequently diminished or increased.” La. R.S. 23:1331 was repealed in 1988 and replaced by La. R.S. 23:1310.8. The supreme court stated that an “employee is not permitted to relitigate his original condition but must show a change in his compensable condition, such as progression, deterioration, or aggravation of the condition, achievement of disabling character by a previously asymptomatic complaint, appearance of new and more serious features, or failure to recover within the time originally predicted.” Bordelon, 472 So.2d at 10.
An increased duration of disability was a type of change in a claimant’s condition contemplated by La. R.S. 23:1331. See Zachary v. Bituminous Cas. Corp., 371 So.2d 1249 (La.App. 3d Cir.1979).
Fox argues on appeal that the WCJ was manifestly erroneous in considering facts outside the relevant time period at issue. Fox also contends that the WCJ erred as a matter of law in ignoring Dr. Majors’ un-controverted medical testimony, and that she is entitled to a modification of the prior award of six weeks because although Dr. Majors initially limited the duration of her restrictions pending a reevaluation, Dr. Majors declared in 2008 that her restrictions were permanent. Fox further argues that the WCJ erred as a matter of law in ignoring the law of the case by examining whether Fox was entitled to any SEB, which had already been determined in | HFox I. She contends the inquiry should have been whether Fox was entitled to a modification of the prior award.
Fox received 293 weeks of SEB through September 30, 2001. She was later paid the six weeks of SEB awarded in Fox I. According to Fox, this leaves her entitled to 221 weeks of SEB ending on February 5, 2006. Fox contends that her activities after February 5, 2006, as well as her supposed lack of discomfort at the 2012 trial, were irrelevant and should not have been considered.
We are mindful that appeals lie from the judgment itself, not the reasons for judgment. Risk Management Services v. Ashley, 38,431 (La.App.2d Cir.5/14/04), 873 So.2d 942, unit denied, 2004-1481 (La.9/24/04), 882 So.2d 1138; Louisiana Workers’ Compensation Corp. v. Gray, 34,-731 (La.App.2d Cir.5/9/01), 786 So.2d 310.
Considering that Fox’s credibility was questioned in Fox I, and considering that Dr. Majors was deposed in 2008 about whether Fox’s condition had changed since she was earlier deposed, the relevance of Fox’s activities did not cease once the period during which she was eligible for SEB ended.
Fox and her husband live on a farm of 48 acres. Fox testified that her husband worked overseas on a 30 days on/30 days off schedule. When he is away for work, someone feeds the cows and horses for her. She does some housework, but also has a maid. She admitted that when deposed in 2008, she said she did housework, fed the dogs, tended to her rose garden, fed and checked her horses, could drive, went to the grocery store, cooked, shopped, 19fished, and cut the grass using a riding lawnmower. She testified at trial that she could no longer cut the grass and hired someone to do it.
*111 When Fox was treated at Ark-La-Tex Cardiology on May 25, 2006, she reported that she had an active lifestyle and walked for exercise. It was recorded there on September 14, 2006, that she occasionally walked for exercise and had no problems doing so. It was also recorded there on January 18, 2008, that she regularly walked for exercise.
Fox agreed that she was not exercising very much in 2002 because of her condition. She said she told her primary care physician, Dr. Ana Pere, on June 22, 2006, that she was exercising regularly only because she did not want Dr. Pere to tell her she needed to exercise. Fox also testified that she told Dr. Jimmy Brown of Ark-La-Tex Cardiology in January of 2008 that she walked for exercise and was doing more exercise than ever before because that was what he wanted to hear.
Fox was using a cane at the time of the 2003 trial, but she was not using a cane at the 2012 trial. When asked if that was a sign of improvement, she replied that she felt worse at night.
Although Fox could have returned to work in August of 2000 on a part-time basis with restrictions, she did not work again until January of 2006. According to Fox, she attempted to find employment during that time by informally talking to people she knew and asking if they were hiring. She never sent in a written job application or interviewed with a company hiring because she did not think they would hire someone with her restrictions. Reynolds’ worker’s comp insurer did not aid her in finding work.
1 inFox had been employed mostly in secretarial and office jobs. She testified that she cannot perform a job like the one she had at Reynolds because she cannot sit for a long time. She also cannot travel long distances because her leg begins cramping. She also needs to keep her foot propped up as instructed by Dr. Majors.
Fox’s medical records show that as early as May 25, 2006, at Ark-La-Tex Cardiology, she reported herself as being retired. Her professed retirement status is also noted in medical records at Natchitoches Regional Medical Center and Willis-Knighton Health Center.
When questioned about several of the records showing that she was retired, Fox could not offer any explanation and said she did not recall filling out the forms recording this.
In the month before her eligibility for SEB ended, Fox began performing clerical work for her sister’s company, Mack Anthony Trucking, making $8 an hour. It was the same kind of work that she did for Reynolds and for another prior employer. What she did for her sister and when she did it depended on what her sister needed. When she first started helping her sister, all of the work was being done at her sister’s home in Robeline, which was a 30-minute drive away. She started doing less work for her sister when the job was moved to Carthage. That was the only reason that she stopped working for her sister. Fox asserted that the medicines she took affected her ability to drive, and that Natchitoches is as far as she will regularly drive, although she will sometimes drive to Alexandria. Although the work for her sister was part-time, Fox admitted that she sometimes worked as many as eight hours in a day for her sister.
|nFox at first claimed she reported her income from her sister on her taxes. However, she later stated that she received her first W-2 from Mack Trucking in 2012. She believed she never received a 1099 form and received only one W-2 because she had not made enough money. Fox agreed that in her 2008 deposition she *112 had testified that she never reported her earnings to the IRS.
When asked at trial if her RSD condition had improved since she was first diagnosed, Fox replied that she could walk better, but hurt badly at night, which had kept her from sleeping for over a year. She sleeps wearing support hose and with her legs propped up. Fox speculated that the pain had become worse at night because she was more active during the day.
Dr. Majors testified in 2003 that because Fox has switched her pain medication from Oxycontin to Duragesic, she no longer had any driving limitation. Dr. Majors explained that the symptoms of RSD can wax and wane, so RSD will not stop someone from ambulating all the time. Although Fox always had her cane when she saw Dr. Majors, she thought Fox could walk without her cane at times. She stated that Fox could do light housekeeping, shopping, and walking.
Dr. Majors explained in 2003 that RSD is generally a permanent condition, although she could not say whether Fox would get better, worse, or stay the same. Dr. Majors thought it was difficult to predict how many hours a week someone with RSD could work. At the time of the deposition, Fox was on Duragesic patches, To-pamax (a seizure medication for nerve pain), Sonata (to help with rest at night), Roxycodone (as needed for breakthrough pain), Zanaflex (a muscle relaxant for muscle spasms), and 11⅞Volt aren or Cataflam as an anti-inflammatory. Medications were sometimes rotated, and Dr. Majors gave as an example that Oxycontin was replaced by Duragesic patches. Fox testified that she was also taking Lortab at the time of trial.
Dr. Majors testified at her 2008 deposition as an expert in pain care and anesthesia. Fox was still using Duragesic patches and taking Voltaren and Topamax. Dr. Majors had not prescribed Roxycodone for breakthrough pain since January 2008. Fox had not had a nerve block since 2003. Dr. Majors’ earlier diagnosis of RSD remained the same. She described RSD as a chronic condition that was permanent in Fox’s case. She had not made many changes with Fox’s pain medications, and she expected Fox to continue on the same medications indefinitely.
Dr. Majors would continue the same work restrictions that she assessed in July of 2003 as Fox’s condition was basically unchanged. The restrictions of working no more than four to six hours a day at sedentary work with her foot propped up were permanent, so Dr. Majors would continue the restrictions beyond six weeks. Interestingly, despite saying Fox’s restrictions were permanent, Dr. Majors agreed it was possible that she would allow Fox to work eight hours if she could tolerate working four to six hours. She would want to see how she did after working four to six hours.
Dr. Majors thought it would be very difficult for Fox to work an eight-hour day because she had been off work for so long. We note that until the deposition, Dr. Majors was unaware that Fox had been doing part-time work for her sister. When Dr. Majors was asked if it would be acceptable if Fox | ^occasionally did clerical work for her sister for less than four hours a day and with a footrest, Dr. Majors replied that it would be acceptable.
When Fox was asked why she never told Dr. Majors that she was working for her sister, she responded that she told Dr. Majors everything. Fox added that Dr. Majors probably would not consider what she did for her sister to be working. However, Fox admitted that it was the same type of work as she did for Reynolds, and Fox considered that to be working. Fox *113 testified at trial that she has had muscle spasms and cramping in her legs since 2003. When asked why Dr. Majors’ medical reports never mention cramping or spasms in the leg since June 20, 2003, Fox replied that she did not know what Dr. Majors had written down during her visits with her. Fox testified she told Dr. Majors about the cramps and spasms in her leg and that Dr. Majors prescribed muscle relaxers.
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551; Dombrowski v. Patterson-UTI Drilling Co., 46,249 (La. App.2d Cir.4/13/11), 63 So.3d 308. To reverse a factfinder’s determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine that the record establishes that the finding is clearly wrong. Stobart v. State through Dept. of Transp. & Dev., 617 So.2d 880 (La.1993); Dombrowski v. Patterson-UTI Drilling Co., supra.
| uUltimately, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart v. State, supra; Dombrowski v. Patterson-UTI Drilling Co., supra.
This record supports the finding that Fox did not prove that she was entitled to an extension of the original SEB award. The WCJ was not manifestly erroneous in concluding that Fox failed to carry her burden of proving a change in her condition requiring a modification of the SEB award of six weeks.

Penalties and attorney fees

Fox asserted that she was entitled to penalties and attorney fees for Reynolds’ failure to pay benefits. An unsuccessful claimant is not entitled to penalties and attorney fees. Patterson v. General Motors Co., 46,559 (La.App.2d Cir.9/21/11), 73 So.3d 465.
DECREE
At Fox’s costs, the judgment is AFFIRMED.